Slip Op. 10-96

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SIOUX HONEY ASSOCIATION, ADEE HONEY FARMS, MONTEREY MUSHROOMS, INC., THE GARLIC COMPANY, and BEAUCOUP CRAWFISH, INC., dba RICELAND CRAWFISH, INC., individually and on behalf of all others similarly situated**, | |
| Plaintiffs, | **Before: Timothy C. Stanceu, Judge** |
| v. | **Court No. 09-00141** |
| **UNITED STATES**, | |
| Defendant. | |

## OPINION

[Dismissing all remaining claims in the action]

Dated: August 27, 2010

*Kelley Drye & Warren LLP* (*Paul C. Rosenthal*, *Donna L. Wilson*, *Kathleen W. Cannon*, *Michael J. Coursey*, and *Richard D. Milone*), counsel for plaintiffs Sioux Honey Association, Adee Honey Farms, The Garlic Company, and Monterey Mushrooms, Inc. and co-counsel for plaintiff Beaucoup Crawfish, Inc., dba Riceland Crawfish, Inc.

*Adduci, Mastriani & Schaumberg, LLP* (*Will E. Leonard* and *John C. Steinberger*), co-counsel for plaintiff Beaucoup Crawfish, Inc., dba Riceland Crawfish, Inc.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Michael J. Dierberg* and *L. Misha Preheim*); *Andrew G. Jones* and *Albert T. Kundrat*, Office of Assistant Chief Counsel (Indianapolis), United States Customs and Border Protection, of counsel; *Jonathan Zielinski*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant United States.

Stanceu, Judge:  Plaintiffs Sioux Honey Association, Adee Honey Farms, Monterey

Mushrooms, Inc., The Garlic Company, and Beaucoup Crawfish, Inc., dba Riceland Crawfish,

Inc. (collectively, "plaintiffs") brought this action against the United States and against a large

number of private parties ("Surety Defendants") engaged in the business of issuing customs

bonds.  Compl. ¶¶ 1-2.  Plaintiffs, domestic producers of honey, mushrooms, garlic, or crawfish,

alleged numerous statutory and regulatory violations by the United States Department of

Commerce ("Commerce") and United States Customs and Border Protection ("Customs")

affecting antidumping duty ("AD") collections on products in numerous new shipper reviews

("NSRs") that Commerce conducted under the antidumping laws.  *Id.* ¶¶ 1-5.  Plaintiffs assert

rights on their own behalf and seek to represent the interests of a class of other, similarly-situated

domestic producers.  *Id.* ¶¶ 2, 77.  Common to many of their claims are allegations that various

government actions, or failures to act, denied them remedial benefits due them under the

antidumping laws and prevented them from obtaining the full amount of distributions to which

they are entitled under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"),

19 U.S.C. § 1675c (repealed 2006).  Compl. ¶ 5.

Ruling on various motions, the court dismissed the Surety Defendants, having concluded

that each claim brought solely against the Surety Defendants and each claim brought jointly

against the Surety Defendants and the United States must be dismissed, either for lack of

standing or for failure to state a claim upon which relief can be granted.  *Sioux Honey Ass'n v.*

*Hartford Fire Ins. Co.*, 34 CIT __, __, 700 F. Supp. 2d 1330, 1351-52 (2010) ("*Sioux Honey I*").

The court now dismisses all remaining claims in this action.

## I. BACKGROUND

The background of this litigation is presented in the court's opinion and order in *Sioux Honey I*, 34 CIT at __, 700 F. Supp. 2d at 1335-38, and is summarized briefly herein.

### A. Customs Bonding for Merchandise Subject to New Shipper Reviews

Upon request, Commerce conducts reviews to establish individual weighted-average dumping margins for foreign exporters or producers of merchandise subject to an antidumping duty order who did not export subject merchandise during the period of the investigation and are not affiliated with a producer or exporter who did so. 19 U.S.C. § 1675(a)(2)(B) (2006). From January 1, 1995, the effective date of legislation establishing the new shipper review procedures, to April 1, 2006 (a period of time to which plaintiffs refer as the "NSR Bond Period," Compl. ¶ 4), the antidumping law permitted these "new shippers" to post bonds with Customs in lieu of cash deposits to serve, during the time required to conduct the review, as security for future payment of antidumping duties. *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (suspended by the Pension Protection Act of 2006, Pub. L. No. 109-280, § 1632(a), 120 Stat. 780, 1165 (2006)). At the center of this action are numerous customs importation bonds ("new shipper bonds") obtained from sureties by importers of Chinese-origin products subject to antidumping duty orders and new shipper reviews during the NSR Bond Period. *See id.* § 1623 (authorizing the collection of bonds for protection of the revenue and compliance with laws enforced by Customs); 19 C.F.R. § 113.62 (2009) (setting forth regulations and conditions for basic importation and entry bonds). Plaintiffs estimate that the new shipper bonds at issue in this case number in the hundreds and have "an estimated combined face value of several hundred million dollars." Compl. ¶ 2. Their claims against the United States involve new shipper reviews conducted under twenty

antidumping orders on imports from China (the "China NSR Orders").  *Id.* ¶ 4.  Plaintiffs'

complaint states that the vast majority of the new shipper bonds were issued on imports subject

to four antidumping orders on imports from China (the "Four Orders"), which pertained to fresh

garlic, preserved mushrooms, freshwater crawfish tail meat, and pure honey.  *Id.*

### B.  Rights of Domestic Producers to Distributions under the CDSOA

The CDSOA directed Customs to deposit collected antidumping (and countervailing)

duties into special accounts, to segregate those duties according to the relevant antidumping (or

countervailing) duty order, and to distribute, on an annual basis, a ratable share of duties

collected for a particular unfairly-traded product to domestic producers who qualified as affected

domestic producers ("ADPs") under the CDSOA, as reimbursement for incurred qualifying

expenditures.  19 U.S.C. § 1675c(e) (repealed 2006); 19 C.F.R. § 159.61 (2009).  In the 2006

repeal of the CDSOA, Congress provided for the continued distribution of duties "on entries of

goods made and filed before October 1, 2007."  Deficit Reduction Act of 2005, Pub. L.

No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006).

Plaintiffs seek to represent not only their own interests but also the interests of a proposed

class of similarly-situated ADPs and parties who seek ADP status in litigation now pending

before the courts, in which the would-be ADPs challenge as unconstitutional CDSOA provisions

limiting ADP status to those parties who expressed support for an antidumping or countervailing

duty petition.[1]  Compl. ¶ 77.

---

[1] In seeking to represent a class consisting of other affected domestic producers ("ADPs")
under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), 19 U.S.C. § 1675c
(repealed 2006), plaintiffs define their proposed class as follows:
[a]ny person or entity that (1) is an affected domestic producer ("ADP") under the
(continued...)

C.  Judicial Proceedings

In *Sioux Honey I*, decided on March 26, 2010, the court dismissed all claims brought

against the Surety Defendants in this action, whether brought jointly against the Surety

Defendants and the United States or brought solely against the Surety Defendants.  *Sioux*

*Honey I*, 34 CIT at __, 700 F. Supp. 2d at 1351.  The court thus dismissed all claims expressed in

Counts One through Six of the complaint.  *Id.*  The court reserved decision on the motion of the

United States to dismiss with respect to the remaining claims in the complaint (Counts Seven

through Fifteen), which are addressed in this Opinion.  *Id.*; United States' Mot. to Dismiss Pls.'

Compl. for Lack of Jurisdiction & for Failure to State a Claim upon which Relief May Be

Granted ("Mot. to Dismiss").

D.  Plaintiffs' Remaining Claims Against the United States

In their remaining claims against the United States, plaintiffs allege that Customs denied

them due process by not allowing them to participate in the adjudications of administrative

protests by the sureties.  Compl. ¶¶ 150-163 (Count Seven).  Commerce, they allege, failed in

some instances to issue to Customs required instructions to liquidate entries subject to new

shipper reviews under the China NSR Orders.  *Id.* ¶¶ 164-173 (Count Eight).  They claim that

Customs unlawfully failed to liquidate some entries within six months of receiving liquidation

---

[1](...continued)
. . . CDSOA . . . , under any antidumping order on imports from the People's
Republic of China under which one or more new shipper administrative reviews
were conducted between January 1, 1995 and August 18, 2006; or (2) would be an
ADP under any such order if the CDSOA's requirement that to qualify as an ADP,
a domestic interested party must have supported the relevant petition to impose
[antidumping] duties, is stricken from the CDSOA as unconstitutional.
Compl. ¶ 77.

instructions from Commerce and thereby allowed the entries to be deemed liquidated, thus

denying plaintiffs the remedial benefits of the antidumping duty orders and reducing the amount

of CDSOA distributions ("offsets") available to plaintiffs as ADPs. *Id.* ¶¶ 174-183 (Count Nine).

They claim, further, that Customs failed to distribute some collected antidumping duties as

required by the CDSOA or distributed some duties it should have withheld from distribution, *id.*

¶¶ 184-190 (Count Ten), and failed to issue demands to sureties to recover duties under the new

shipper bonds, *id.* ¶¶ 191-197 (Count Eleven).  Based on a theory that the statutory power to

compromise antidumping duties was transferred from Customs to Commerce in 1980, plaintiffs

claim that Customs, in some instances, compromised antidumping duties owed in new shipper

reviews although lacking legal authority to do so. *Id.* ¶¶ 198-205 (Count Twelve).  They claim

that Customs wrote off certain antidumping duties, contrary to various statutes and regulations.

*Id.* ¶¶ 206-215 (Count Thirteen).  Plaintiffs claim that actions by Customs to cancel bonds and

charges against bonds were unlawful because Customs failed to publish, as required by law,

guidelines on its exercise of bond cancellation authority.  *Id.* ¶¶ 216-225 (Count Fourteen).

Finally, plaintiffs allege that Customs failed to notify the Department of Justice of the need to file

collection actions against the sureties on certain new shipper bonds and thereby violated a

provision in the Customs regulations.  *Id.* ¶¶ 226-235 (Count Fifteen).  On these various claims,

plaintiffs seek relief that, *inter alia*, would declare various challenged governmental actions to be

contrary to law, set aside those various actions as contrary to law, order Customs and Commerce

to cease certain practices, and order Customs to take various affirmative actions involving claims

on the bonds.  *Id.* ¶¶ 163, 173, 183, 190, 197, 205, 215, 225, 235.

## II. Discussion

In deciding a USCIT Rule 12(b)(1) motion to dismiss that does not challenge the factual

basis for the complainant's allegations, and when deciding a USCIT Rule 12(b)(5) motion to

dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual

allegations to be true and draws all reasonable inferences in a plaintiff's favor.  *See Henke v.*

*United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (setting forth the standard for determining

subject matter jurisdiction); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 & n.13

(Fed. Cir. 1993); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (setting forth

the standard under which the court evaluates a motion for failure to state a claim upon which

relief can be granted).

As required by USCIT Rule 8(a)(2), a complaint shall contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  USCIT Rule 8(a)(2).

Rule 8(a)(2) requires "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations omitted).  Although a complaint need not contain detailed factual allegations, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*

(citations omitted).

### A.  Claim of Denial of Due Process for Lack of Opportunity to Participate in Adjudications of Administrative Protests Brought by the Surety Defendants (Count Seven)

In Count Seven, plaintiffs claim that Customs, contrary to the Due Process Clause of the

Constitution, did not allow them to participate in the agency's adjudications of administrative

protests that the Surety Defendants filed with Customs and that arose out of demands by Customs

for performance under the new shipper bonds.  Compl. ¶¶ 150-163.  They allege a deprivation of

property interests they claim to possess as intended third-party beneficiaries under the bonds,

stating that "[f]or each new shipper bond, each Plaintiff and Class member that is an intended

third-party beneficiary of that bond possesses significant and valuable contract rights thereunder

. . . ."  *Id.* ¶ 152.  The complaint posits that each plaintiff has property rights under the new

shipper bonds that include, but are not limited to, "the right to its share of all payments for which

the Surety Defendant that issued the bond is liable, and the right to sue such defendant for its

wrongful refusal to perform under the bond."  *Id.*

       Plaintiffs' complaint acknowledges that "[u]nder current law governing Customs' protest

procedures (19 U.S.C. § 1515) and Customs' implementing regulations of that law (19 C.F.R.

Part 174), only the protesting importer and its bond surety are allowed to participate in Customs'

adjudication of protests."  *Id.* ¶ 155.  In their acknowledgment, plaintiffs apparently intended to

refer to 19 U.S.C. § 1514(c)(2), under which they do not qualify as parties who may protest a

customs decision.  *See* 19 U.S.C. § 1514(c)(2) (2006).  Plaintiffs maintain that

> [t]he exclusion of Plaintiffs and Class members from this adjudicatory process
> constitutes a governmental deprivation of their protected property interests in such
> bonds without sufficient prior notice and without a prior opportunity to be heard
> by Customs on the potential taking, and as such is unlawful under the Due Process
> Clause.

Compl. ¶ 155.  They seek declaratory relief to that effect and injunctive relief compelling

Customs to allow them to participate in all proceedings that could affect their "protected property

rights under new shipper bonds issued under the China NSR Orders."  *Id.* ¶ 163.

To withstand a motion to dismiss, the claim in Count Seven must satisfy the three

elements of a constitutional due process "takings" claim: (1) the claimant must be deprived of a

protected property interest; (2) the deprivation must be due to some government action; and

(3) the deprivation must be without due process.  *See Cospito v. Heckler*, 742 F.2d 72, 80 (3d

Cir. 1984).  With respect to the first element, the court previously determined that plaintiffs are

not intended third-party beneficiaries under the contracts underlying the new shipper bonds.

*Sioux Honey I*, 34 CIT at __, 700 F. Supp. 2d at 1346-48.  The court concluded "that neither the

new shipper provisions in the antidumping law, the CDSOA provisions, 19 U.S.C. § 1623, nor

19 C.F.R. § 113.62 makes plaintiffs intended third-party beneficiaries of the customs bonds that

they seek to place at issue in this case."  *Id.* at __, 700 F. Supp. 2d at 1348.  Thus, Count Seven

fails for lack of standing because plaintiffs lack the protected property interests on which they

base their deprivation claim.  There has been no demonstrated "injury in fact – an invasion of a

legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

'conjectural' or 'hypothetical.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)

(citations omitted).  Moreover, plaintiffs fail to state in Count Seven that they are bringing a

constitutional challenge to 19 U.S.C. § 1514(c)(2) or any related statutory provisions, even

though acknowledging that the governing statute does not authorize Customs to allow them to

participate in protest proceedings.  The claim in Count Seven must be dismissed under USCIT

Rule 12(b)(1).

B.  Claims that Commerce Failed to Issue Liquidation Instructions to Customs (Count Eight)

In Count Eight, plaintiffs allege that Commerce failed in three situations to issue to

Customs required instructions for liquidation of entries subject to new shipper reviews conducted

under the China NSR Orders.  Compl. ¶¶ 164-173.  First, plaintiffs allege that "for each of the

China NSR Orders, Commerce has failed to issue such liquidation instructions for certain entries

of imports subject to that order despite having received no request to include the imports'

exporter in the relevant upcoming administrative review."  *Id.* ¶ 166.  Second, plaintiffs allege

that "Commerce has failed to issue such instructions for certain entries of imports subject to one

or more of the China NSR Orders, despite having issued an unappealed assessment rate in the

final results of an administrative review for the exporter of those imports."  *Id*. ¶ 167.  Third,

plaintiffs allege that "Commerce has failed to issue such instructions for certain entries of

imports subject to one or more of the China NSR Orders despite the lifting of this Court's

injunction against the liquidation of those entries."  *Id.* ¶ 168.

Plaintiffs claim the alleged failures to issue liquidation instructions injured them "by

depriving them of, and unreasonably delaying," the remedial benefits under the antidumping laws

of the new shipper review orders, and CDSOA distributions of duties collected under those

orders, both of which they claim they otherwise would have received.  *Id.* ¶ 171.  Plaintiffs state

that, for imports from an unreviewed exporter, Commerce is required to instruct Customs to

liquidate entries at the duty deposit rate.  *Id.* ¶ 166 (citing 19 C.F.R. § 351.212(c)).  Referring to

Commerce's "15-day" rule, plaintiffs state, with respect to exporters with their own deposit rates,

"Commerce's practice is to issue the appropriate liquidation instructions to Customs within

15 days of Commerce's determination of that exporter's non-participation in the relevant

administrative review."  *Id.*  They state, with respect to exporters subject to the countrywide rate

for a non-market economy country, that "Commerce's practice is to issue the appropriate

liquidation instructions to Customs within 15 days of Commerce's issuance of the final results

for the relevant administrative review."[2]  *Id.*

Whether or not Commerce issues liquidation instructions following publication of the

final results of an administrative review, entries not liquidated by Customs during the six-month

period following publication of final results ordinarily will be subject to "deemed liquidation" at

the rate declared at the time of entry pursuant to Section 504(d) of the Tariff Act of 1930.  *See*

19 U.S.C. § 1504(d) (2006).  Section 504(d) directs Customs, unless liquidation is extended, to

liquidate an entry within six months of receiving notice from Commerce, another agency, or a

court that a suspension of liquidation required by statute or court order is removed.[3]  *Id.*  If

Customs fails to fulfill this statutory duty, the entry is subject to deemed liquidation under

Section 504(d), *i.e.*, the entry is "treated as having been liquidated at the rate of duty, value,

quantity, and amount of duty asserted by the importer of record."  *Id.*  The six-month period

established by Section 504(d) begins to run on the date of publication of final results of an

---

[2] The United States Department of Commerce's ("Commerce") subsequent practice was to issue liquidation instructions fifteen days after publication of the final results of an administrative review.  *See SKF USA Inc. v. United States*, 33 CIT __, __, 675 F. Supp. 2d 1264, 1281 (2009).  Commerce's rationale for both the original and modified fifteen-day rule was the avoidance of deemed liquidations under Section 504(d) of the Tariff Act of 1930 (19 U.S.C. § 1504(d) (2006)).  *Id.* at __, 675 F. Supp. 2d at 1284.

[3] The statute provides in pertinent part that:
when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry . . . within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry.  Any entry . . . not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record.
19 U.S.C. § 1504(d).

administrative review.  *See Int'l Trading Co. v. United States*, 281 F.3d 1268, 1274 (Fed. Cir.

2002).

Plaintiffs admit that "the fact that some entries under the Four Orders were deemed

liquidated would not be adverse to Plaintiffs as to the assessment rate ultimately applied to those

entries," explaining that "[t]his is because that rate will be no lower than the rate Commerce

calculated in an administrative review . . . ."  Pls.' Opp'n to Defs.' Mots. to Dismiss 30.

Plaintiffs further admit that the antidumping duty deposit rate "that applied to all entries from

exporters undergoing NSRs under the Four Orders during the Four Orders Period was the

countrywide rate for that order, which ranged from 183.80 percent to 376.67 percent."  *Id.* at 29;

*see* Compl. ¶¶ 51-52.  Plaintiffs also admit that "[a]ny exporter that is eligible for a NSR under

an AD order on imports from China is subject to that order's countrywide rate until it obtains its

own deposit rate."  Compl. ¶ 54.  In the same paragraph, they also admit that "[i]f that exporter

requests a NSR, and Commerce initiates such a review, the exporter will remain subject to the

countrywide rate for deposits on entries made during the pendency of that review, which can last

up to 18 months."  *Id.* (citations omitted).

Plaintiffs' statements, when considered on the whole and in the context of § 1504(d), do

not allow the court to conclude that the entries of concern to plaintiffs, if deemed liquidated

according to § 1504(d) due to the failure of Commerce to issue liquidation instructions and the

resulting inability of Customs to effect liquidation during the six-month periods following

publication, would have caused plaintiffs the injury alleged in Count Eight.  Plaintiffs admit that

deemed liquidation of entries subject to one of the Four Orders would not injure them as to the

assessment rate.  *See* Pls.' Opp'n to Defs.' Mots. to Dismiss 30.  Although they do not make the

same admission with respect to the other sixteen China NSR Orders, they rely only on the Four

Orders for their general claim of standing: the complaint alleges that each plaintiff "is a domestic

producer of goods that directly compete with imports subject to one of the Four Orders," that

each qualifies as a domestic interested party under one of the Four Orders, and each is, for

purposes of the CDSOA, an ADP under one of the Four Orders.  Compl. ¶ 5.  Thus, the facts

plaintiffs have alleged do not allow the court to conclude that the claimed injury resulted from

deemed liquidations under any of the other sixteen China NSR Orders.  Although they seek to

represent the interests of a class consisting of domestic producers of goods competing with

imports under the other China NSR Orders who are ADPs (and parties seeking to qualify as

ADPs) under those other orders, *see* Compl. ¶ 77, they cannot represent the interests of a class of

plaintiffs on the claims in Count Eight, where, as here, they lack standing on their own to bring

those claims.  *See O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974).  The court concludes that

Count Eight fails for lack of a demonstrated "injury in fact – an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or

'hypothetical.'"  *Lujan*, 504 U.S. at 560-61 (citations omitted).

<u>C.  Claim that Customs Failed to Liquidate Entries (Count Nine)</u>

Plaintiffs claim in Count Nine that "Customs has failed to liquidate one or more entries

under each of the China NSR Orders notwithstanding Commerce's issuance of instructions to

Customs to liquidate those entries."  Compl. ¶ 177.  Plaintiffs allege that "one or more entries

under each of the China NSR Orders has become deemed liquidated due to Customs' failure to

liquidate those entries within six months of being instructed by Commerce to do so" and that

> for one or more of such entries, the assessment rates calculated by Commerce, and
> which would have been applied to determine the amount of final assessed AD
> duties owed on such entries had Customs timely liquidated them, were higher than
> the deposit rates that were used to determine the amount of assessed duties.

*Id.* ¶ 178.  Thus, unlike Count Eight, Count Nine specifically alleges, with respect to the claim

therein, that the assessment rate, on at least one occasion, exceeded the deposit rate.  Concerning

the claimed injury, plaintiffs allege that

> Customs' failure to liquidate such entries has directly injured Plaintiffs and Class
> members by depriving them of, and/or unreasonably delaying, (1) the remedial
> benefits of the China NSR Orders intended by the AD law; and (2) CDSOA
> distributions under the China NSR Orders, both of which they would have
> received had Customs timely liquidated those entries as instructed by Commerce.

*Id.* ¶ 181.  But their admission that deemed liquidations of entries subject to the Four Orders

would not be adverse to them as to the assessment rate, Pls.' Opp'n to Defs.' Mots. to

Dismiss 30, precludes a finding that the deemed liquidations to which they object in Count Nine

caused them an injury in fact.  Here also, the named plaintiffs may not represent a class of

plaintiffs on the claim for which they cannot themselves establish standing to sue.  *See O'Shea*,

414 U.S. at 493-95.

Even were the court to allow plaintiffs to proceed to represent the interests of the

proposed class, the claim in Count Nine still would not be one on which plaintiffs could obtain

relief.  Their claim in Count Nine is grounded in the aforementioned Section 504(d).  *Id.* ¶ 176

(citing 19 U.S.C. § 1504(d)).  Plaintiffs seeks three forms of relief for the harm they allege they

incurred.  First, they request that the court declare unlawful "Customs' failure to liquidate entries

under the China NSR Orders that Commerce has instructed Customs to liquidate."  *Id.* ¶ 183.

Second, they would have the court "set aside" the failures to liquidate entries.  *Id.*  Third, they

urge the court to "compel and order Customs to cease unlawfully withholding, and unreasonably delaying, the liquidation of entries of imports subject to the China NSR Orders that Commerce has instructed Customs to liquidate." *Id.*

The first form of relief plaintiffs seek, that the court declare unlawful past failures of Customs to liquidate entries within the six-month period of § 1504(d), is meaningless.  The statute, on its face, requires Customs to liquidate an entry within the six-month period established by § 1504(d).  Thus, all deemed liquidations under § 1504(d) result from an unlawful governmental failure to effect the liquidation that the statute directs, either because Customs failed to follow appropriate instructions or because Commerce failed to issue instructions by which Customs could act.  Therefore, any past failures to liquidate entries are defined as contrary to law by the statute itself.

The intended meaning of the second form of relief sought, that the court "set aside" Customs' failure to liquidate entries, is not clear to the court.  A failure to liquidate an entry within the time required by § 1504(d) is an inaction, not an action, to which the consequence of deemed liquidation attaches.  As such, a failure to liquidate an entry timely according to § 1504(d) would appear to be something that cannot be "set aside" or otherwise undone.  If, by seeking such relief, plaintiffs would have the court set aside the *consequences* of the alleged failures to liquidate, *i.e.*, the deemed liquidations, then the relief sought is beyond the power of the court to provide.  Any failures to liquidate entries during the respective six-month periods that occurred would have resulted, by operation of the statute, in deemed liquidations that are final according to Section 514 of the Tariff Act of 1930, 19 U.S.C. § 1514.  The court is aware of no authority under which it could invalidate such deemed liquidations in the circumstances of

this case, and plaintiffs cite to none. Deemed liquidations, as a general matter, are final and

conclusive absent a timely protest by a party authorized to file such a protest. *See Int'l Trading*

*Co.*, 281 F.3d at 1276-77; *Shinyei Corp. of Am. v. United States*, 524 F.3d 1274, 1276 (Fed. Cir.

2008).[4]

The third form of relief that plaintiffs seek is directed to future failures to perform timely

liquidations as required by § 1504(d). Compl. ¶ 183. Plaintiffs' demand for this form of relief

for the proposed class would require the court to consider the factors relevant to the grant or

denial of a permanent injunction. The court would consider whether the members of the

proposed class are incurring irreparable harm that would be prevented by the injunctive relief

being sought, whether the remedy at law is inadequate, whether the balance of the hardships

favors the plaintiffs, and whether the granting of the injunctive relief is in the public interest.

*Ebay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The existence of irreparable harm is a question of fact ordinarily adjudicated at a hearing

or trial. In this case, plaintiffs could prove no set of facts that would entitle the members of their

proposed class to the permanent injunction sought on the claim in Count Nine. For purposes of

ruling on that claim, the court assumes, *arguendo*, that members of the proposed class are being

irreparably harmed by past and current failures of Customs to liquidate entries timely according

---

[4] A circumstance in which the Court of Appeals for the Federal Circuit has recognized the power of the Court of International Trade to order reliquidation of entries despite the finality of 19 U.S.C. § 1514–a challenge by an importer to erroneous liquidation instructions issued by the United States Department of Commerce–is readily distinguished from the circumstance presented by the claim in Count Nine. *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1299-1304, 1312 (Fed. Cir. 2004). The claim in Count Nine alleges harm to domestic parties, not importers, that was caused by deemed liquidations resulting from alleged error by Customs, not by Commerce. Compl. ¶¶ 176-178, 181.

to § 1504(d) and would be harmed by similar failures occurring in the future.  But plaintiffs

cannot demonstrate that the demanded relief would prevent future harm to the class.  Plaintiffs,

understandably, do not allege that Customs intentionally allowed deemed liquidation of entries to

occur.  It must be presumed that any deemed liquidations occurring in the future will result from

inadvertence on the part of government officials faced with voluminous entries to administer.[5]

Plaintiffs essentially are seeking a permanent injunction under which Customs would be ordered,

permanently, to perform its task under § 1504(d) flawlessly, thereby allowing no deemed

liquidations of entries under the new shipper orders.  Because deemed liquidations may not

reasonably be presumed to be intentional rather than accidental occurrences, the court cannot

conclude that a permanent injunction would prevent them.  Moreover, the court is not aware of

authority allowing it to reverse the effect of any deemed liquidations that might occur despite

such an injunction.  For these reasons, the "irreparable harm" factor would not favor the grant of

a permanent injunction on the facts plaintiffs allege in Count Nine.

Even were the court free to grant injunctive relief despite plaintiffs' failure to show

irreparable harm that would be prevented by the relief sought, the court would conclude that of

the remaining three factors, only the inadequacy of a remedy at law could be satisfied.  Because

deemed liquidation under § 1504(d) may result in importers' paying less in duties than would

have occurred had Customs fulfilled its obligation under § 1504(d) (as plaintiffs allege in Count

Nine to have happened), and because the court, in the circumstances of this case, would appear to

lack the power to set aside a deemed liquidation, the court may presume that the members of the

---

[5] In this respect, the claim in Count Nine differs from the claim in Count Eight, which also seeks permanent injunctive relief, Compl. ¶ 173, but involves a smaller number of administrative actions, *i.e.*, the required issuance by Commerce of timely liquidation instructions.

proposed class would not have an adequate remedy at law. The remaining two factors, however, would not favor a grant of injunctive relief.

An injunction that permanently subjects Customs officials to possible contempt of court for the offense of inadvertently allowing entries to liquidate according to § 1504(d), needless to say, would impose a hardship on those officials. The hardship on plaintiffs from the denial of injunctive relief is not comparable because the injunction would be of little value. As discussed above, the court is aware of no authority under which it could reverse the effects of any deemed liquidations that occur. The hardship the class of plaintiffs would suffer from the denial of the injunction is the loss of any potential deterrent to noncompliance, the effectiveness of which is a matter of speculation. In contrast, the hardship Customs officials would incur from the prospect of contempt is real. The court concludes that the balance of hardships does not favor the grant of a permanent injunction.

Nor can it be concluded that the permanent injunction plaintiffs seek on behalf of the class would be in the public interest. In enacting § 1504(d), Congress was concerned that delays by Customs in liquidating entries following the removal of a suspension of liquidation would deprive the process of needed certainty. *See* S. Rep. No. 95-778, at 32 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2211, 2243 ("The provisions adopted by the committee would increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction."). Enactment of the provision is an implicit acknowledgment by Congress that Customs officials, faced with voluminous entries, inadvertently would fail at times to meet the six-month time deadline set forth in the statute. The deemed liquidation provision in § 1504(d) addresses the prospect of such inadvertent failures by

causing the liquidations to occur by operation of law.  In compelling Customs officials to avoid

any deemed liquidations of the entries in question, such an injunction unrealistically would

demand perfection on the part of Customs officials in performing timely liquidations under

§ 1504(d).  In enacting the provision, Congress understood that such perfection might be

unattainable.  The injunction being sought would go beyond the remedy Congress intended, *i.e.*,

deemed liquidation, and permanently would attach to inadvertent noncompliance the harsh

consequence of potential contempt of court.

        In summary, plaintiffs' claim in Count Nine fails for lack of standing because they did not

themselves incur the injury on which they seek to represent the interests of a class.  Even were

they able to establish standing, they could prove no set of facts qualifying them for the permanent

injunction they demand on behalf of the class members, and the two other forms of relief they

seek on behalf of the class are unavailable.

        D.  Claims that Customs Failed to Distribute or Withhold Antidumping Duties (Count Ten)

        In Count Ten, plaintiffs claim "[o]n information and belief" that "during FY 2001

through FY 2008, Customs failed to distribute, or to withhold from distribution pending the

resolution of the CDSOA Support Challenge Lawsuits, certain AD duties that were assessed and

collected on imports subject to the China NSR Orders entered prior to October 1, 2007."  Compl.

¶ 186.  Their claim is that in so doing Customs failed to comply with the CDSOA.  *Id.* ¶ 185.  As

a remedy, plaintiffs request that the court, pursuant to 5 U.S.C. § 706(2)(A) through (D), "hold

unlawful and set aside Customs' failure to distribute, or to withhold from distribution pending

the resolution of the CDSOA Support Challenge Lawsuits, AD duties assessed and collected

under the China NSR Orders," and that the court, pursuant to 5 U.S.C. § 706(1) and 28 U.S.C.

§ 2643(c)(1), "compel and order Customs to cease unlawfully withholding, and unreasonably

delaying, distribution of such duties, and to forthwith distribute all such duties in compliance

with the CDSOA." *Id.* ¶ 190.

The claim in Count Ten does not meet the minimum requirements set forth by the

Supreme Court in *Bell Atlantic*, under which the "[f]actual allegations must be enough to raise a

right to relief above the speculative level, . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Bell Atl.*, 550 U.S. at 555 (citations omitted).  The

claim, therefore, must be dismissed according to USCIT Rule 12(b)(5).

The claim is defective, first, in alluding to two possible, and opposite, situations: a failure

by Customs to distribute collected antidumping duties under the CDSOA, and a failure of

Customs to withhold antidumping duties from distribution.  Because the complaint uses the word

"or," the stated claim, read literally, is that Customs either failed to distribute antidumping duties,

or did distribute antidumping duties when it should not have done so.  Count Ten fails to state

that either of these situations definitely occurred.  A claim that requires such extensive

speculation on the part of the court must be dismissed.

Even were the Count Ten claim amended to state definitely that Customs should have

distributed some antidumping duties instead of withholding them but also should have withheld

some antidumping duties instead of distributing them, it still would not suffice under *Bell*

*Atlantic*.  An allegation made "on information and belief" that Customs failed to distribute some

collected antidumping duties under the CDSOA still would be too vague to make out a claim on

which relief can be granted.  In support of this bare allegation, plaintiffs plead no facts

whatsoever.  Although advancing a claim "on information and belief," the claim does not identify

what information forms the basis for a belief that a violation of the CDSOA occurred.  There is

nothing in Count Ten to indicate what occurred, or when it occurred, that resulted in duties that

were collected on the China new shipper orders but that were not distributed under the CDSOA

as required by law.  Even though plaintiffs seek a broad remedy including injunctive relief, they

give no indication of whether they are alleging an isolated incident or a widespread practice.  In

the complete absence of pleaded facts, the court is left to speculate as to what may have occurred

to give rise to such a claim.

    Similarly, Count Ten does not actually claim "on information and belief" that Customs

has failed to withhold from distribution certain antidumping duties pending the resolution of

lawsuits brought by parties who claimed they should have been granted status as affected

domestic producers under the CDSOA (referred to by plaintiffs as the "CDSOA Support

Challenge Lawsuits").[6]  *See* Compl. ¶¶ 184-190.  Had such a claim been made, it would fare no

better.  Whatever facts could have given rise to a belief that Customs failed to withhold some

duties from distribution, and did so contrary to law, are not revealed.[7]

---

[6] Plaintiffs allege that they are ADPs under the CDSOA and do not allege that they are parties who may gain status as affected domestic producers as a result of ongoing litigation. Compl. ¶ 5.  However, they state that each member of the class they seek to represent "either is or may be an ADP under the CDSOA."  *Id.*

[7] Plaintiffs fail to cite to any requirement that Customs withhold duties from distribution due to the litigation in question.  In *Southern Shrimp Alliance v. United States*, 33 CIT __, __, 617 F. Supp. 2d 1334, 1347 (2009), the Court of International Trade held that Customs did not exceed its discretion in withholding duties for the possible future benefit of plaintiffs in the lawsuits brought by parties who claimed they should have been granted status as affected domestic producers under the CDSOA (referred to by plaintiffs as the "CDSOA Support Challenge Lawsuits"), but the court did not hold that Customs was *required* to do so.  Some of the litigation to which Count Ten alludes is now resolved.  *SKF USA, Inc. v. U.S. Customs & Border Prot.*, 583 F.3d 1340 (Fed. Cir. 2009).  Other litigation continues.  *See, e.g., PS Chez*

(continued...)

E.  Claim that Customs Failed to Demand Performance under the Bonds (Count Eleven)

Plaintiffs state as follows in Count Eleven: "On information and belief, Customs, on one or more occasions, has failed to issue a demand that a Surety Defendant perform under one or more new shipper bonds issued in connection with a NSR conducted under a China NSR Order despite Customs' claim for such performance having accrued."  Compl. ¶ 193.  Plaintiffs claim they are injured because the alleged failure or failures to make a demand or demands on the bond or bonds deprived them of, and unreasonably delayed, the remedial benefits of the antidumping law and their CDSOA distributions.  *Id.* ¶ 195.  They seek a remedy under which the court would "hold unlawful and set aside each failure by Customs to issue a demand for a Surety Defendant's performance under a new shipper bond issued in connection with a NSR conducted under a China NSR Order where Customs' claim for such performance has accrued."  *Id.* ¶ 197.  They also seek an injunction under which Customs would be ordered "to cease unlawfully withholding and unreasonably delaying" issuance of such demands on sureties.  *Id.*

Count Eleven does not state a claim upon which relief against the United States can be granted.  It fails to allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl.*, 550 U.S. at 555.  The facts alleged amount to nothing more than an opaque allegation that there has been at least one instance in which a claim against a surety for unpaid antidumping duties in a China new shipper review has accrued and Customs has yet to make a demand on the surety for payment.  Plaintiffs allege no specific facts in support of their claim in Count Eleven, which as a result rests almost entirely on speculation.  Plaintiffs ground their demand for relief on

---

[7](...continued)
*Sidney, L.L.C., v. U.S. Int'l Trade Comm'n*, 32 CIT __, 558 F. Supp. 2d 1370 (2008), *appeal docketed*, Nos. 2008-1526, 1527 (Fed. Cir. Aug. 20, 2008).

their assertions that "Customs is required to issue such a demand once its claim against a surety

has accrued" and that "Customs' obligation to issue such a demand constitutes a ministerial duty

that is not committed to agency discretion by law." *Id.* ¶ 192.  Although stating that "Customs is

required to issue such a demand once its claim against a surety has accrued," *id.*, plaintiffs cite no

authority (and the court is aware of none) under which Customs is required to make the demand

*immediately* upon accrual of the claim.  The court is provided no alleged facts upon which it

could be concluded that Customs has exceeded its discretion with respect to the timing of its

issuances of demands upon sureties.  Moreover, the claim lacks even an allegation that were

Customs to make the contemplated demand or demands now (if indeed it has not already done so

since the filing of the complaint), the demand or demands would be barred as untimely.  Upon

assuming the truth of all factual allegations in Count Eleven, the court is unable to conclude that

the right to relief is beyond speculation.  The court, therefore, must dismiss the claim in Count

Eleven according to USCIT Rule 12(b)(5).

F.  Claim that Customs Unlawfully Compromised Antidumping Duties (Count Twelve)

   In Count Twelve, plaintiffs claim that Customs, without legal authority, compromised

some antidumping duties owed as a result of new shipper reviews.  Compl. ¶¶ 198-205.

Plaintiffs state that "Customs' authority under 19 U.S.C. § 1617 to compromise assessed

[antidumping and countervailing] duties was transferred to Commerce in 1980." *Id.* ¶ 200 (citing

Reorganization Plan No. 3 of 1979, § 5(a)(1)(C), (G), 44 Fed. Reg. 69,273, 69,275 (1979)

(effective as of Jan. 2, 1980 under Exec. Order No. 12,188, 45 Fed. Reg. 989,993 (1980))

("Reorganization Plan")).  Plaintiffs further assert that "[s]ince then, Customs has not been

authorized to compromise any claim of the United States for assessed AD duties, and any such

compromise by Customs for AD duties assessed under the China NSR Orders would be

unlawful." *Id.* As relief, plaintiffs demand that the court "hold unlawful and set aside Customs'

compromise of AD duties assessed under the China NSR Orders" and enjoin Customs from

unlawfully compromising such duties in the future. *Id.* ¶ 205.

Section 617 of the Tariff Act of 1930 provides generally that the Secretary of the

Treasury is authorized to compromise claims "arising under the customs laws." 19 U.S.C.

§ 1617 (2006). In 1980, Congress, in subparagraph (C) of § 5(a)(1) of the Reorganization Plan

transferred from the Department of the Treasury to the Secretary of Commerce "all functions

pursuant to the antidumping and countervailing duty laws, with certain exceptions.

Reorganization Plan, § 5(a)(1), 44 Fed. Reg. at 69,274. Two of the exceptions in

subparagraph (C) are that "the Customs Service . . . shall accept such deposits, bonds, or other

security as deemed appropriate by the [Commerce] Secretary" and that it "shall assess and collect

such duties as may be directed by the [Commerce] Secretary." *Id.* § 5(a)(1)(C), 44 Fed. Reg.

at 69,275. In subparagraph (G) of § 5(a)(1) of the Reorganization Plan, Congress transferred to

the Commerce Secretary all functions of the Treasury Department pursuant to Section 617 of the

Tariff Act, but it did so with the qualification, "with respect to the functions transferred by

subparagraph (C) of this paragraph." *Id.* § 5(a)(1)(G), 44 Fed. Reg. at 69,275.

In moving to dismiss, defendant takes issue with plaintiffs' construction of the

Reorganization Plan, arguing that subparagraph (G) and the subparagraph (C) exceptions are

properly construed to mean that Customs retained discretion to compromise claims for

antidumping duties. Mot. to Dismiss 35-36. According to defendant's argument,

subparagraph (G) transfers only authority to compromise claims "with respect to matters for

which Commerce was given authority by virtue of section 5(a)(1)(C), such as determining

whether to issue an antidumping order and the rate of duties determined in an administrative

review," *id*., and that "Customs retains substantial authority with respect to matters following the

issuance of a final determination by Commerce and the issuance of liquidation instructions." *Id.*

at 36.  Defendant contends, further, that "[p]articularly with respect to the issues that SHA is

most concerned about in this suit–payment by sureties upon a bond–Customs has broad

discretion," relying on *Hartford Fire Insurance Co. v. United States*, 544 F.3d 1289, 1294 (Fed.

Cir. 2008), and *United States v. Hanover Insurance Co.*, 82 F.3d 1052, 1054 (Fed. Cir. 1996).

Mot. to Dismiss 36.

     Plaintiffs have the better argument.  Subparagraph (G) of the Reorganization Plan

transfers to Commerce all functions pursuant to Section 617, *i.e.*, all functions pertaining to the

cancellation of claims, "with respect to the functions transferred by subparagraph (C)."

Reorganization Plan, § 5(a)(1)(G), 44 Fed. Reg. at 69,275.  The functions transferred by

subparagraph (C) included the functions of determining what antidumping duties are to be

assessed and collected and determining what "deposits, bonds, or other security" are appropriate

to secure payment of antidumping duties.  *Id.* § 5(a)(1)(C), 44 Fed. Reg. at 69,275.  Under the

exception in subparagraph (C), Customs is to assess and collect antidumping duties as directed

by the Commerce Secretary and accept the security that the Commerce Secretary deems

appropriate.  *Id.*  The language of subparagraph (C) under which Customs is to "assess and

collect" antidumping duties does not connote retention of authority to compromise claims for

those duties.  *Id.*  Defendant's construction of the exceptions in subparagraph (C) is overly broad

in presuming retention in Customs of a specific function, the compromising of claims for

antidumping duties, that the plain language of the Reorganization Plan neither requires nor

implies.  The function of assessing and collecting antidumping duties are distinct from the

function of compromising claims for those duties.  An established canon of construction is that

exceptions to general principles are to be construed narrowly.  *See Comm'r v. Clark*,

489 U.S. 726, 739 (1989); 2A Norman J. Singer, Sutherland on Statutes and Statutory

Construction § 47:11, at 331 (7th ed. 2007) ("Where a general provision in a statute has certain

limited exceptions, all doubts should be resolved in favor of the general provision rather than the

exceptions.").  Thus, the better construction of the Reorganization Plan is that Customs may not

act on its own to compromise antidumping duties and may do so only with the direction or

participation of the Secretary of Commerce.  Defendant's reliance on *Hartford Fire Insurance*

*Co.*, 544 F.3d at 1294, and *Hanover Insurance Co.*, 82 F.3d at 1054, is misplaced.  Neither case

holds that Customs, under the Reorganization Plan, retained authority to compromise claims for

antidumping duties.

     Although rejecting defendant's construction of the Reorganization Plan, the court still is

unable to conclude that relief can be granted on the claim plaintiffs assert in Count Twelve, in

which plaintiffs allege as follows:

> Based on the limited Customs data available to Plaintiffs, Customs has not
> publicly accounted for all AD duties assessed under the China NSR Orders during
> FY 2001 through FY 2008 as having been either collected or not collected by that
> agency.  On information and belief, some if not all of the AD duties assessed
> under the China NSR Orders during FY 2001 through FY 2008 for which
> Customs has not accounted are assessed AD duties that Customs has unlawfully
> compromised in violation of 19 U.S.C. § 1617.  On information and belief, at
> least some of such compromised AD duties were secured by new shipper bonds,
> and were compromised by Customs through a legal process that excluded the
> Plaintiffs and Class members that are intended third-party beneficiaries of such
> bonds.

Compl. ¶ 201. To the extent plaintiffs base their claim on their alleged status as intended third-party beneficiaries on the new shipper bonds, they lack standing because they do not qualify as intended third-party beneficiaries. *Sioux Honey I*, 34 CIT at __, 700 F. Supp. 2d at 1348.

To the extent that the claim can be construed to be based on something other than plaintiffs' purported beneficiary status, the claim still fails, as plaintiffs fail to allege facts according to which the injury they claim to have incurred resulted from the conduct to which they object, *i.e.*, the compromising of antidumping duties without the direction or participation of Commerce. In Count Eleven, the only relevant factual allegations in the complaint are that "Customs has not publicly accounted for" the assessed antidumping duties, and that some, if not all, of the unaccounted-for duties were "unlawfully compromised" by Customs. Compl. ¶ 201. The complaint adds that

> [a]s a result of Customs' unlawful compromise of AD duties . . . Customs is unable to collect such duties, and has directly injured Plaintiffs and Class members by depriving them of (1) the remedial benefits of the China NSR Orders intended by the AD law; [and] (2) their constitutionally protected property interest in assessed AD duties under the China NSR Orders as ADPs and Contingent ADPs under those orders.

*Id.* ¶ 203. Although the complaint does not so state explicitly, the court infers from Count Twelve, considered as a whole, that plaintiffs allege that the compromising was contrary to law because it occurred without Commerce's direction or participation. Other than the untenable contention that the duties were compromised by Customs through a process that was unlawful because it excluded plaintiffs and class members, whom plaintiffs erroneously identify as intended third-party beneficiaries of the bonds, nothing in Count Twelve enables the court to infer an additional reason why plaintiffs consider the alleged compromising unlawful.

Plaintiffs could be injured by the loss of remedial benefits of antidumping duty orders and

CDSOA distributions only if duties were *not* collected that *would have been* collected *but for* the

alleged unlawful conduct.  But absent from Count Twelve is an allegation that any government

official compromised antidumping duties that could have been, and should have been, collected

to safeguard the public fisc.  The allegation that "Customs has not publicly accounted for all AD

duties assessed under the China NSR Orders during FY 2001 through FY 2008 as having been

either collected or not collected by that agency," *id.* ¶ 201, does not suffice because it fails to

allege "but for" causation.  Although plaintiffs allege an injury in fact, the action complained

of–compromising of antidumping duties by the wrong government agency–in itself cannot be the

cause of the injury plaintiffs allege they incurred.  The allegation that Customs is "unable" to

collect certain antidumping duties "[a]s a result of Customs' unlawful compromise of AD

duties," *id.* ¶ 203, is circular: Customs is unable to collect *any* duties once a claim for such duties

is "compromised," whether Commerce authorized the compromising or not.  The generalized

allegations in Count Twelve, when assumed to be true, impermissibly leave to the court the task

of speculating as to whether plaintiffs could qualify for some form of relief.[8]  *See Bell Atl.*,

550 U.S. at 555.  Count Twelve, therefore, must be dismissed according to USCIT Rule 12(b)(5).

G.  Claims that Customs Wrote Off Uncollected Antidumping Duties (Count Thirteen)

In Count Thirteen, plaintiffs allege on information and belief that "Customs has written

off as uncollectible, or intends to write off as uncollectible, uncollected AD duties assessed under

---

[8] It is unclear how the court, in response to the demand for relief, could "hold unlawful and *set aside* Customs' compromise of AD duties assessed under the China NSR Orders." Compl. ¶ 205 (emphasis added).  At least some of the duties alleged to be unlawfully compromised would need to be collected from importers who are not parties to this action.

the China NSR Orders," Compl. ¶ 207, and that in so doing, Customs has violated and will

violate various statutes and regulations.  *Id.* ¶¶ 208-210.  As a threshold matter, the claim is

defective in failing to allege that an agency action actually has occurred.  A mere intention to act

unlawfully to write off duties as uncollectible, absent extraordinary circumstances calling for

emergency equitable relief (not alleged here), is not agency action ripe for judicial review.  *See*

*U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F. 3d 1344, 1349-50

(Fed. Cir. 2005).

Even if the court were to construe Count Thirteen to challenge an agency action that has

occurred or is so imminent that judicial review may obtain, Count Thirteen would fail to state a

valid claim in alleging that "Customs did not and will not meet the requirements and conditions

of 31 U.S.C. § 3711(a)(1) with regard to any or all of the AD duties assessed but not collected

under the China NSR Orders that Customs has written off, or intends to write off, as

uncollectible."  Compl. ¶ 208.  The statutory provision on which plaintiffs rely provides in

pertinent part that the head of an executive agency "shall try to collect a claim of the United

States Government for money or property arising out of the activities of . . . the agency."

31 U.S.C. § 3711(a)(1) (2006).  Plaintiffs cite no facts which, if presumed to be true, would

allow the court to conclude that Customs has violated or is about to violate 31 U.S.C.

§ 3711(a)(1).  The provision on which plaintiffs rely does not prohibit an agency from

determining that a claim for duties is uncollectible.  In alleging merely that Customs either has,

or is about to, write off uncollected duties, plaintiffs have done nothing beyond identifying the

statute and alleging that Customs, in some unspecified way, has violated the statute or is about to

do so.  Thus, were this claim ripe for review, it still would be dismissed as speculative.  *See Bell*

*Atl.*, 550 U.S. at 555.

Second, plaintiffs claim that "Customs did not and will not meet the requirements and

conditions of 31 C.F.R. § 901.1(a) with regard to some or all AD duties that were assessed but

not collected under the China NSR Orders, and which Customs has written off, or intends to

write off, as uncollectible."  Compl. ¶ 209.  Plaintiffs rely on language in the Federal Claims

Collection Standards, under which "[f]ederal agencies shall aggressively collect all debts . . . "

arising out of their activities or referred to them for collection, and under which "[c]ollection

activities shall be undertaken promptly with follow-up action taken as necessary."  31 C.F.R.

§ 901.1(a) (2009); *see* Compl. ¶ 209.  Here also, plaintiffs fail to allege facts from which the

court could conclude that Customs has violated, or is about to violate, § 901.1(a).  The

regulations cannot plausibly be construed to require the impossible–collection of an uncollectible

debt–and essentially all that plaintiffs allege is that Customs is writing off debt as uncollectible

or is about to do so.

Plaintiffs allege a violation of Section 631(a) of the Tariff Act of 1930, which directs the

Treasury Secretary to "enter into contracts and incur obligations with one or more persons for

collection services to recover indebtedness arising under the customs laws" and conditions the

obligation with the words "but only after the Customs Service has exhausted all administrative

efforts, including all claims against applicable surety bonds, to collect the indebtedness."[9]

---

[9] The provision reads in full as follows:
Notwithstanding any other provision of law, the Secretary, under such terms and
conditions as the Secretary considers appropriate, shall enter into contracts and
incur obligations with one or more persons for collection services to recover

(continued...)

19 U.S.C. § 1631(a) (2006).  The only pertinent "fact" alleged in support of this claim is "[o]n

information and belief, Customs did not and will not meet the requirements and conditions of

19 U.S.C. § 1631(a) with regard to some or all AD duties that were assessed but not collected

under the China NSR Orders and that Customs has written off, or intends to write off, as

uncollectible."  Compl. ¶ 210.  This vague allegation fails to identify what Customs did or did

not do (or is about to do) in violation of 19 U.S.C. § 1631(a).

     Finally, plaintiffs allege "[o]n information and belief" that "in writing off as uncollectible

AD duties assessed under the China NSR Orders, Customs has failed to meet other statutory and

regulatory obligations required of that agency before it may write off such AD duties."  Compl.

¶ 211.  This claim is devoid of any specific factual allegation and legal basis.

     Due to the lack of ripeness, Count Thirteen must be dismissed under USCIT Rule

12(b)(1).  Were the claims therein construed to contest a final government action, they still would

offer insufficient factual allegations to state a claim upon which relief can be granted.  *See Bell*

*Atl.*, 550 U.S. at 555.

---

[9](...continued)
indebtedness arising under the customs laws and owed the United States
Government, but only after the Customs Service has exhausted all administrative
efforts, including all claims against applicable surety bonds, to collect the
indebtedness.

19 U.S.C. § 1631(a) (2006).

### H.  Claim that Customs Unlawfully Canceled, or Intends to Cancel, New Shipper Bonds or Charges Thereunder (Count Fourteen)

In Count Fourteen, plaintiffs direct their claim to the alleged failure of Customs to publish guidelines on the exercise of authority to cancel customs bonds and charges thereunder, as required by Section 623(c) of the Tariff Act of 1930, 19 U.S.C. § 1623(c) (2006), and the Freedom of Information Act, 5 U.S.C. § 552(a)(1)(C)-(D) (2006).  Compl. ¶¶ 216-225.  Plaintiffs state in Count Fourteen that the lack of such published guidelines renders unlawful a cancellation of a new shipper bond or a charge under such bond.  *Id.* ¶ 219.

Because Count Fourteen relies upon the Administrative Procedure Act ("APA") for a cause of action, Compl. ¶ 222 (citing 5 U.S.C. § 706(2)(A)-(D)), the court first must construe Count Fourteen to ascertain the agency action being challenged.  *See Motions Systems Corp. v. Bush*, 437 F.3d 1356, 1359 (Fed. Cir. 2006).  The court observes, first, that nothing in Count Fourteen indicates that plaintiffs are challenging a failure by Customs to issue guidelines.[10] Instead, the claim challenges as unlawful cancellations of bonds or charges effected in the absence of such guidelines.  *See* Compl. ¶¶ 219-220, 222.  The court's construction of the claim is consistent with the nature of the relief plaintiffs seek.  Rather than relief directing Customs to issue guidelines, plaintiffs request that the court "hold unlawful and set aside Customs' cancellation of any new shipper bond, or any charge to such bond" and "compel and order

---

[10] Construing the claim as a challenge to the failure to issue guidelines would raise questions of standing, as plaintiffs do not claim to be principals or sureties on customs bonds and are not intended third-party beneficiaries on the customs bonds that are the subject of many of the claims in their case.  *See* Compl. ¶¶ 6-8; *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 34 CIT __, __, 700 F. Supp. 2d 1330, 1348-49 (2010) ("*Sioux Honey I*").

Customs to cease and refrain from unlawfully canceling any new shipper bond, or any charge to such bond." *Id.* ¶ 225.

Despite basing their claim on unlawful cancellation of bonds and charges, plaintiffs, paradoxically, fail to allege any specific instance in which Customs actually *has* canceled a new shipper bond or charge against a new shipper bond.  Plaintiffs only state "[o]n information and belief" that "Customs has cancelled, *or intends to cancel*, one or more new shipper bonds, or charges to such bonds, that secure the payment of assessed AD duties on imports subject to the China NSR Orders." *Id.* ¶ 221 (emphasis added).  Similarly, plaintiffs contend that "Customs' actual *or intended* cancellation of any new shipper bond, or any charge to such bond, violates *or would violate* Section 1623(c) and Section 552(a)(1)(C) and (D), and constitutes, or *would constitute*, final agency action . . . ." *Id.* ¶ 222 (emphasis added).  Thus, if Customs has not effected one of the cancellations to which plaintiffs refer–a possibility left open by their pleading–the agency action on which plaintiffs base their claim has yet to occur.  Moreover, there is no allegation in Count Fourteen of imminent irreparable harm that will result to plaintiffs from an agency action that is about to be taken.  Upon assuming plaintiffs' factual allegations to be true, the court cannot conclude that the stated claim is ripe for judicial review.  *See U.S. Ass'n of Imps.*, 413 F.3d at 1349-50.  Therefore, the claim in Count Fourteen must be dismissed according to USCIT Rule 12(b)(1).

Even were the court able to construe the claim in Count Fourteen to allege irreparable harm from an imminent agency action, it still would be required to dismiss this claim under USCIT Rule 12(b)(5).  Plaintiffs are incorrect in concluding that 19 U.S.C. § 1623(c) and the

Freedom of Information Act would invalidate a cancellation of a new shipper bond or a charge

under such bond for lack of the published guidelines. *See* Compl. ¶ 219.

Section 623(c) of the Tariff Act of 1930 authorizes the Treasury Secretary to cancel a

bond or a charge against a bond, in the event of breach of a bond condition, "upon the payment

of such lesser amount or penalty or upon such other terms and conditions as he may deem

sufficient." 19 U.S.C. § 1623(c). The statute further provides that "[i]n order to assure uniform,

reasonable, and equitable decisions, the Secretary of the Treasury shall publish guidelines

establishing standards for setting the terms and conditions for cancellation of bonds or charges

thereunder." *Id.* Plaintiffs allege that Customs has failed to publish the guidelines that § 1623(c)

expressly requires. Compl. ¶ 217.

The provision requiring Customs to publish guidelines for cancellation of bonds or

charges was added to Section 623(c) in 1988 by the Omnibus Trade and Competitiveness Act.

Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1904, 102 Stat. 1107,

1313 (1988). Nothing in the amending statute indicates that Congress intended to condition on

the issuance of the required guidelines the exercise of the long-standing authority to cancel bonds

or charges. Nor is there an indication of such an intent in the legislative history of the 1988

amendment. *See id.*; H.R. Rep. No. 100-576 (Conf. Rep.), *as reprinted in* 1988 U.S.C.C.A.N.

1547. The court concludes that plaintiffs have based their claim on an invalid construction of

Section 623(c).

In Count Fourteen, plaintiffs claim that the cancellations of bonds and charges against

bonds were unlawful because Customs failed to satisfy the requirement in the Freedom of

Information Act that an agency publish in the Federal Register, for the guidance of the public, its

rules of procedure and substantive rules of general applicability.[11]  Compl. ¶ 218.  Plaintiffs

impliedly allege that Customs has adopted such procedures.  *Id.* ("Customs has failed to meet

these requirements for the procedures it has adopted for exercising its authority to cancel customs

bonds under Section 1623(c).").  Here also, the assumed existence of such unpublished

procedures is not a basis on which any bond or charge cancellations could be held to be invalid.

Although the Freedom of Information Act, 5 U.S.C. § 552(a)(1)(C) and (D), requires an agency

to publish its rules of procedure and its generally-applicable substantive rules and statements of

general policy, nothing in the Freedom of Information Act states or suggests the conclusion

plaintiffs would have the court draw: that bond or charge cancellations grounded in the statutory

authority of 19 U.S.C. § 1623 are invalid due to the agency's failure to publish guidelines.

Therefore, the court concludes that plaintiffs' claim in Count Fourteen must be dismissed

pursuant to USCIT Rule 12(b)(1) for lack of ripeness.  *See U.S. Ass'n of Imps.*, 413 F.3d

at 1349-50.  And, in the alternative, even were the court able to construe the claim in Count

Fourteen to allege irreparable harm from an imminent agency action, it still would be required to

dismiss this claim under USCIT Rule 12(b)(5) for failure to state a claim upon which relief can

be granted.

---

[11] Plaintiffs also allude in Count Fourteen to a claim that Customs, by cancelling new
shipper bonds or charges thereunder that pertain to antidumping duties, has acted contrary to law
because, according to plaintiffs, antidumping duties "can only be compromised by Commerce
under 19 U.S.C. § 1617."  Compl. ¶ 220.  This reference in Count Fourteen reiterates a claim
made in Count Twelve, which is dismissed for failure to state a claim upon which relief can be
granted, as discussed previously in this Opinion.

### I.  Claim that Customs Failed to Provide Prosecution Notices (Count Fifteen)

Plaintiffs' claim in Count Fifteen involves alleged failures by Customs to provide notices to the Department of Justice for collection of unsatisfied demands on sureties.  Compl. ¶¶ 226-235.  Plaintiffs base their claim on a provision of the Customs regulations, 19 C.F.R. § 113.52,[12] which requires Customs, in the event a customs bond "is unsatisfied upon the expiration of 90 days after liability has accrued under the bond," to report the matter "to the Department of Justice for prosecution unless measures have been taken to file an application for relief or protest . . . or to satisfactorily settle the matter."  19 C.F.R. § 113.52 (2009); *see* Compl. ¶¶ 230-231, 233-235.  As relief, plaintiffs seek, *inter alia*, an order compelling Customs to provide the Justice Department with overdue notices and to provide timely notices henceforth. Compl. ¶ 235.

Upon crediting all facts alleged in Count Fifteen, the court is unable to conclude that plaintiffs have established beyond the speculative level their right to relief on their claim. Plaintiffs allege "[o]n information and belief" that "Customs has failed to provide Justice with Section 11[3].52 Notices for its claims under one or more new shipper bonds that secure the payment of assessed AD duties on imports subject to one of the China NSR Orders."  *Id.* ¶ 233. They also allege "[o]n information and belief" that "Customs has issued one or more demands to the Surety Defendants for performance under new shipper bonds that are final as to those

---

[12] The complaint does not cite this provision but erroneously cites to 19 C.F.R. § 114.52, a nonexistent provision.  Compl. ¶¶ 230-231, 233-235.

defendants." *Id.* ¶ 228.  Count Fifteen adds that Hartford[13] (certain of the dismissed defendants

in *Sioux Honey I*, 34 CIT at __, 700 F. Supp. 2d at 1352) has admitted that demands for

performance under customs bonds are final as to it.  Compl. ¶ 228.  Stating that the Justice

Department is unable to bring a lawsuit for collection of duties from a surety absent the notice

from Customs, *id.* ¶ 231, plaintiffs allege that "[b]ased on Plaintiffs' review of this Court's

docket, Justice, to date, has not filed any collections lawsuit against any Surety Defendant for

performance under a new shipper bond."  *Id.* ¶ 232.

      The regulation on which plaintiffs rely does not impose a rigid requirement that Customs

refer to the Justice Department for collection any demand on a surety for payment of duties that

is unsatisfied upon the expiration of 90 days after liability has accrued under the bond.  Customs

is directed by the regulation to make the referral "unless measures have been taken . . . to

satisfactorily settle the matter."  19 C.F.R. § 113.52.  Plaintiffs' claim does not address the

measure of discretion that the regulation permits government officials with respect to satisfactory

settlement.  There is no allegation in Count Fifteen of any specific instance in which there has

been neither a referral by Customs nor measures taken to "satisfactorily" settle the liability.

      And, although referring to the statute of limitations for collection actions, Compl. ¶ 231

(citing the six-year general statute of limitations in 28 U.S.C. § 2415(a) (2006)), Count Fifteen

does not allege, either in general or with respect to any specific demand on a surety, that the

Justice Department is now unable to file a collection action because Customs neglected to make

---

[13] The "Hartford defendants" include Hartford Fire Insurance Company, Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, and Hartford Insurance Company of the Southeast.  The Hartford Defs.' Mot. to Dismiss the Compl. 1 n.1 ("Hartford Mot."); *see Sioux Honey I*, 34 CIT at __, 700 F. Supp. 2d at 1352.

a timely referral of a collectible claim against a surety on a new shipper bond.  *See id.*

¶¶ 226-235.  Moreover, any such allegation would appear to be precluded by the six-year statute

of limitations applying to an action by the United States to collect on an unsatisfied demand on a

surety.  Under 28 U.S.C. § 2415(a), any failure of Customs to make a referral for prosecution that

occurred within the two years prior to the initiation of this action (as required by the statute of

limitations in 28 U.S.C. § 2636(i) (2006) for actions brought under 28 U.S.C. § 1581(i)) could

not yet have resulted in a time-barred collection action.

 The alleged fact that the Justice Department has not filed collection lawsuits against

sureties on new shipper bonds, if presumed true, does not establish that Customs has acted

contrary to 19 C.F.R. § 113.52.  For example, it is conceivable that, subsequent to referral,

circumstances caused Justice Department officials to decide not to initiate a collection action.

Count Fifteen does not claim that the Justice Department impermissibly failed to initiate

collection lawsuits; moreover, any such claim, in attempting to challenge the exercise of

enforcement discretion, would be beyond judicial review.  *See Heckler v. Chaney*, 470 U.S. 821,

832 (1985).

 Because the factual allegations offered to support the claim in Count Fifteen do not

suffice to allow the court to conclude that the prospect of relief is anything but a matter of

speculation, Count Fifteen must be dismissed as required by USCIT Rule 12(b)(5) and *Bell*

*Atlantic*, 550 U.S. at 555.

 J.  Motion for Jurisdictional Discovery, Other Pending Motions, and Entry of Judgment

 Plaintiffs filed on March 18, 2010 a motion, opposed by defendant, to take discovery in

the form of interrogatories seeking information in support of subject matter jurisdiction for their

claims against the United States.  Pls.' Mot. for Jurisdictional Discovery.  On April 13, 2010,

plaintiffs moved for oral argument on this motion, Pls.' Mot. for Oral Argument Regarding Pls.'

Mot. for Jurisdictional Discovery, and on April 14, 2010 moved for oral argument on defendant's

motion to dismiss.  Pls.' Mot. for Oral Argument Regarding the Gov't's Mot. to Dismiss.  On

April 29, 2010, plaintiffs moved for leave to file a reply to defendant's response to plaintiffs'

motion for jurisdictional discovery.  Pls.' Mot. for Leave to File a Reply to the Gov't's Resp. to

Pls.' Mot. for Jurisdictional Discovery & Mot. for Oral Argument Concerning Request for

Jurisdictional Discovery.  The court will grant the motion for leave to file the reply for purposes

of ruling on the motion to allow discovery and, because the court is denying the motion to allow

discovery and granting defendant's motion to dismiss, will deny as moot plaintiffs' motions for

oral arguments.

        In their motion to take discovery and thereby obtain answers to their interrogatories,

plaintiffs maintain that their allegations "are more than sufficient to establish this Court's

jurisdiction over Plaintiffs' claims brought under the Administrative Procedure[ ] Act," Pls.'

Mot. for Jurisdictional Discovery 1, but add that "to the extent the Court determines that more

detailed allegations and/or supporting evidence is required, Plaintiffs move this Court for leave to

take discovery relating to subject matter jurisdiction."  *Id.* at 2.  Plaintiffs indicate that their

motion to take discovery is, at least in part, in response to defendant's argument that plaintiffs

may not obtain judicial review because they fail to identify specific instances in which the

government has acted, or failed to act, contrary to law.  *Id.* ("The crux of the Government's

argument is that in order to establish subject matter jurisdiction, Plaintiffs must allege, on an

entry-by-entry and/or bond-by-bond basis, each specific instance in which the Government has

acted or failed to act in the manner alleged in the Complaint."). Plaintiffs argue that "the

information necessary to identify such instances is in the Government's sole control." *Id.* The

court concludes, after considering plaintiffs' motion for discovery in the individual contexts of

the nine remaining counts in this litigation, that the motion should be denied.

The court observes, first, that plaintiffs include interrogatories directed to Counts Eight,

Nine, Twelve, Thirteen, and Fourteen even though the contemplated discovery could not benefit

plaintiffs with respect to the claims in those counts.[14] *See* Pls.' Interrogatories to the Gov't

Relating to Jurisdiction ("Pls.' Interrogatories"). The claim in Count Seven, that Customs must

allow them to participate in protest proceedings as a matter of due process, fails for a reason–lack

of the property interests on which plaintiffs base their due process claim–outside the scope of the

intended discovery. For Counts Eight and Nine, plaintiffs, due to their own admissions, cannot

demonstrate an injury in fact and, therefore, lack standing to maintain the claims therein, either

on their own behalf or on behalf of the members of their proposed class. For Count Twelve,

plaintiffs' interrogatories seek information on individual entries "for which Customs has wholly

or partially cancelled or compromised under 19 U.S.C. § 1617 that Entry's Amounts Assessed

and/or Post-Liquidation Interest," Pls.' Interrogatories 7, including the dates of each action, the

amounts compromised, the amounts paid in lieu of the full amounts assessed, and whether the

collected amounts were distributed under CDSOA. *Id.* at 7-8. The claim in Count Twelve fails,

however, for two reasons that would not be addressed by the information sought in the

interrogatories. Those two reasons are that plaintiffs are not intended third-party beneficiaries on

---

[14] Plaintiffs do not address directly in their interrogatories the claim in Count Seven. *See* Pls.' Interrogatories to the Gov't Relating to Jurisdiction ("Pls.' Interrogatories").

the new shipper bonds and that the action plaintiffs challenge–the compromising of claims

without the direction or participation of the Commerce Department–has no causal relationship to

the injury they allege.  Count Thirteen fails for lack of ripeness, but even were discoverable facts

to overcome this deficiency, plaintiffs could qualify for no relief because they erroneously

conclude that the writing off of antidumping duties is contrary to various statutes and regulations

that do not place a blanket prohibition on the writing off of obligations owed the United States.

Count Fourteen also fails for lack of ripeness, and even were discoverable facts to allow a ripe

claim that Customs has canceled a new shipper bond or charge, that claim still would be invalid

because plaintiffs err in concluding that the absence of published guidelines by Customs would

invalidate such a cancellation.  In summary, the discovery plaintiffs want to conduct will be of no

benefit with respect to the claims in Counts Seven, Eight, Nine, Twelve, Thirteen, and Fourteen.

　　　The court's dismissals of the remaining three counts in the complaint, Counts Ten,

Eleven, and Fifteen, result in part from plaintiffs' failures to make specific factual allegations of

unlawful government actions.  As to each, the court concludes that plaintiffs' motion to conduct

jurisdictional discovery should not be granted.  Taken together, these three counts pursue a

theory that CDSOA distributions received by plaintiffs would have been greater but for either the

failure by Customs to distribute collected duties or the distribution by Customs of duties it should

not have distributed (Count Ten), the failure of Customs to make one or more demands on a

surety or sureties for antidumping duties secured by a new shipper's bond (Count Eleven), and

the failure of Customs to report to the Department of Justice instances in which a surety's

liability under a customs bond is unsatisfied 90 days after liability has accrued, "unless measures

have been taken to file an application for relief or protest . . . or to satisfactorily settle the

matter," 19 C.F.R. § 113.52 (Count Fifteen).

In Count Ten, plaintiffs fail to state that any action or inaction definitely occurred and

allege only that Customs either failed to distribute collected duties it should have distributed or

distributed duties it should not have distributed. *See* Compl. ¶¶ 184-190. With respect to Count

Ten, plaintiffs seek detailed, entry-specific information from Customs on the amounts of

antidumping duties assessed, collected, and distributed on all entries of merchandise subject to

one of the Four Orders that qualify for distribution under CDSOA. Pls.' Interrogatories 7-8. The

court declines to allow this broad, and burdensome, discovery in support of Count Ten, which

states no definite claim, alleges no specific facts, and requires a degree of speculation that the

Supreme Court considered unacceptable in *Bell Atlantic*, 550 U.S. at 555.

Plaintiffs seek to support their claim in Count Eleven by obtaining entry-specific

information concerning various bonds and the issuing sureties, including information on whether,

when, and in what amounts demands were made on the bonds and on the sureties' responses to

the demands. Pls.' Interrogatories 8-9. Count Eleven, however, alleges no specific facts and

makes only the bare allegation that Customs, "on one or more occasions, has failed to issue a

demand that a Surety Defendant perform under one or more new shipper bonds." Compl. ¶ 193.

The claim lacks even an allegation that the demand or demands that did not occur are now

untimely. Plaintiffs have failed to allege facts that would suffice even as a threshold to justify the

extensive jurisdictional discovery they propose.

In support of Count Fifteen, plaintiffs seek detailed information on every bonded entry

subject to a new shipper review under one of the Four Orders for which payment of duty was

ever delinquent, including date of issuance of any notice under 19 C.F.R. § 113.52, information

on protests related to the entry that were filed by the principal or surety, and information on

settlement measures.  Pls.' Interrogatories 10.  The scope of information sought for Count Fifteen

is overly broad and unjustified by the claim stated in that count, which is deficient in failing to

recognize the degree of discretion imparted by 19 C.F.R. § 113.52 and the effect of the six-year

statute of limitations applying to collection actions.

In summary, the claims in Counts Ten, Eleven, and Fifteen rest on only vague factual

allegations which, if assumed to be true, do not establish a right to relief beyond the speculative

level.  They must be dismissed now for failure to satisfy the pleading standard the Supreme Court

set forth in *Bell Atlantic*, 550 U.S. at 555.  The high degree of speculation called for by these

claims makes questionable plaintiffs' implied premise that burdensome discovery should be

allowed because it might lead to claims upon which this litigation could proceed.

Certain publicly available information relied on by plaintiffs for their discovery motion

provides an additional reason why the motion to allow discovery should not be granted.  This

information indicates that facts are not likely to be uncovered that will overcome the deficiencies

in Counts Ten, Eleven, and Fifteen.  Specifically, in opposing the government's motion to

dismiss and in seeking permission to conduct jurisdictional discovery, plaintiffs submit various

materials addressing under-collection of antidumping duties under the Four Orders, including

two declarations of one of their attorneys, Mr. Michael J. Coursey.  Pls.' Opp'n to Defs.' Mots.

to Dismiss, Attach. A; Pls.' Mot. for Jurisdictional Discovery, Attach. B.  Plaintiffs summarize

these materials generally as signifying that "[a]ccording to its own documents, the Government

failed to collect almost $900 million in AD duties assessed under the Four Orders during the past

seven years, and in fact collected less than 7 percent of the total AD duties assessed during this

period."  Pls.' Reply to the Gov't's Resp. to Pls.' Mot. for Jurisdictional Discovery & Mot. for

Oral Argument Concerning Request for Jurisdictional Discovery 1.  Both of the declarations of

Mr. Coursey cite, and rely in part on, a 2008 report of the U.S. Government Accountability

Office ("GAO").  *See* Pls.' Opp'n to Defs.' Mots. to Dismiss, Attach. A; Pls.' Mot. for

Jurisdictional Discovery, Attach. B; U.S. General Accounting Office, Report to Congressional

Requesters, Antidumping & Countervailing Duties: Congress & Agencies Should Take

Additional Steps to Reduce Substantial Shortfalls in Duty Collection, GAO-08-391, at 20-22

(Mar. 2008), http://www.gao.gov/new.items/d08391.pdf (last visited Aug. 25, 2010) ("2008

GAO Report").  The GAO concluded that more than $613 million in assessed antidumping duties

went uncollected from Fiscal Years 2001 through 2007, that 84% of that amount resulted from

uncollected antidumping duties on entries of Chinese-origin goods subject to one of the Four

Orders, and that an estimated 40% of that amount involved entries of merchandise from

exporters who had new shipper status.  2008 GAO Report 13-14.  The report found that more

than one-third of the uncollected duties were owed by only four importers and that 63% of the

uncollected duties were owed by only 20 importers.  *Id.* at 16.

The GAO identified four key factors for the uncollected antidumping duties: (1) the

retrospective component of the antidumping and countervailing duty system, which creates the

risk of uncollected duties because assessed duties can exceed cash deposits and bond amounts,

*id.* at 20-24; (2) new shipper reviews, which previously permitted bonding instead of cash

deposits and also pose a risk by allowing a new shipper to obtain a low deposit rate going

forward that is based on a few unrepresentative transactions or even a single transaction, *id.*

at 24-26; (3) the standard bond formula Customs uses, which according to the GAO "provides

little protection of AD/CV duty revenue because it sets bond amounts at a low level," *id.* at 20;

and (4) the lack of background or financial checks on importers, *id.* at 28-29.  The individual

amounts owed by the 20 importers who together owed, as of September 2007, 63% of the total of

more than $613 million in uncollected antidumping duties ranged from a high of $122 million to

a low of $7 million.  *Id.* at 15-16.  The insufficiency of the bonding was revealed as a huge factor

in the uncollectibility of the duties, as the reported bonding covered only a minuscule percentage

(less than one percent) of the duties owed by those 20 importers.  *See id.* at 16.  Of the

20 importers, 11 importers had a bond of $50,000 (the minimum allowed by Customs for any

continuous bond, *see Monetary Guidelines for Setting Bond Amounts*, Directive 99-3510-004

(July 23, 1991), http://www.cbp.gov/linkhandler/cgov/trade/legal/directives/3510-004.ctt/3510-

004.txt (last visited Aug. 25, 2010) ("*Bond Directive*")), two had bonds of $60,000, and the

highest bond of the group, $700,000, belonged to the importer who owed the most antidumping

duties, $122 million.  2008 GAO Report 16.  A 2003 report of the U.S. Treasury Department's

Inspector General on CDSOA implementation, cited to and relied upon by plaintiffs, also

identified bond sufficiency as a problem.  Pls.' Opp'n to Defs.' Mots. to Dismiss, Attach. A,

Ex. 1, at 5.  A July 2007 U.S. Treasury Department report, "Duty Collection Problems–FY 2003-

2006," upon which plaintiffs also rely, is definitive on the cause of under-collection of

retrospectively assessed duties:

> Of the $939.3 million in antidumping and countervailing duties that were
> retrospectively assessed in fiscal years 2003-2006, 55 percent ($512.9 million)
> remains uncollected.  *The reason CBP is less successful collecting duties billed
> after entry is that they are not fully secured by bonds or cash deposits.*

*Id.*, Attach. A, Ex. 3, at 3 (emphasis added).  The GAO also concluded that the extent of

uncollected AD/CV duties is affected by unresolved legal protests, which account for about 43%

of the value of uncollected AD/CV duties.  2008 GAO Report 3, 17.

The GAO noted that according to the Office of Chief Counsel of Customs, which is

responsible for referring unsatisfied duty claims to the Department of Justice for collection,

nearly $290 million of the $350 million of unpaid antidumping and countervailing duties that are

in the collection process have slim prospects of collection, *id.* at 3, 13, "because many of the

importers involved have disappeared, have no assets, or have declared bankruptcy," *id.* at 4.

Customs told the GAO that prospects are particularly unfavorable for collecting supplemental

duties from foreign importers, which unpaid duties present high costs of collection that may

exceed any amount actually collected.  *Id.* at 29.  The report also states that "[t]he Office of Chief

Counsel reports that it is currently working with Justice to collect over $80 million in outstanding

AD/CV duties from two sureties that are undergoing insolvency proceedings." *Id.* at 18.

The GAO identified deemed liquidations that occurred from October 2004 through June

2007 at a frequency of approximately one percent on 3.1 million entries subject to antidumping

duties.  *Id.* at 33.  The GAO found that "[t]he potential revenue lost or gained on entries deemed

liquidated appears minimal," that the vast majority of the total of 37,000 deemed liquidations

during that period appeared to cause no gain or loss of revenue, that 507 of them cost the

government $106,000 in lost revenue, and that 171 of them should have resulted in

approximately $1.5 million in refunds to importers.  *Id.* at 34.

In summary, the outcome of the discovery plaintiffs seek to conduct could not cure the

defects in the claims in Counts Seven, Eight, Nine, Twelve, Thirteen, and Fourteen of the

complaint.  It is unlikely to cure the defects in the claims in Counts Ten, Eleven, and Fifteen, for

which any possible benefit would not justify the burdensome discovery plaintiffs propose.  For

these reasons, the court concludes that the discovery motion should be denied.

Having concluded that all counts in the complaint must be dismissed, the court further

concludes that judgment dismissing the action should be entered at this time.  Plaintiffs have

given no indication of an intention to amend their complaint, even though they have had ample

time to do so; it has been nearly one year since the United States filed its motion to dismiss on

September 4, 2009.  *See* Mot. to Dismiss.  A court is not required to provide, sua sponte, the

opportunity to amend a complaint, particularly in the absence of any intention by a plaintiff to do

so.  *See Demings v. Nationwide Life Ins. Co.*, 593 F.3d 486, 492 (2010) (6th Cir. 2010) (stating

that "it is not incumbent upon a district court to craft a litigant's complaint, especially when it is

dealing with sophisticated parties" and citing *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037,

1042 (6th Cir. 1991) ("[A] district court does not abuse its discretion in failing to grant a party

leave to amend where such leave is not sought.")); *Wagner v. Daewoo Heavy Indus. Am. Corp.*,

314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to

amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a

motion to amend nor requested leave to amend before the district court."); *Royal Business

Group, Inc. v. Realist, Inc.*, 933 F.2d 1056, 1066 (1st Cir. 1991) (declining plaintiffs' request to

amend the complaint and explaining that before the district court, "plaintiffs had the option of

filing an amended complaint at any time during the eleven-month period that the motion to

dismiss was pending but chose not to exercise that option" (citations omitted)).

Because plaintiffs have not chosen to amend their complaint and instead propose to conduct discovery in the event the court finds insufficient the claims in the complaint as drafted, the court need not consider the question of whether an amended complaint would be futile. Even so, there is reason to conclude that the contemplated discovery would not lead to information supporting claims upon which relief could be granted. The court can appreciate that under-collection of duties on entries subject to any of the Four Orders has reduced substantially the antidumping duties available for distribution to plaintiffs under the CDSOA. Nevertheless, the apparent causes of the under-collection, according to findings by the GAO and other sources upon which plaintiffs rely in seeking discovery, are not those upon which plaintiffs base the theory upon which they are suing the government. The causes of the under-collection as found by the GAO and others–*i.e.*, missing or insolvent importers of record, grossly insufficient bonding (including bonding in new shipper reviews), the potential for low cash deposit rates resulting from new shipper reviews conducted on a small number of transactions, and some duty collection actions delayed by protests–would not be remediable through judicial review on any theory on which plaintiffs could bring an action under the APA and 28 U.S.C. § 1581(i).

### III. CONCLUSION

For the reasons stated above, all claims brought against the United States in Counts Seven through Fifteen of the complaint must be dismissed. Because the discovery plaintiffs seek would

produce no benefit that would justify the broad scope, and potential burden, of that discovery,

plaintiffs' discovery motion will be denied.  Judgment will be entered dismissing this action.


                                                    /s/ Timothy C. Stanceu
                                                    Timothy C. Stanceu
                                                    Judge

Dated: August 27, 2010
          New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr>
<td>

**SIOUX HONEY ASSOCIATION, ADEE HONEY FARMS, MONTEREY MUSHROOMS, INC., THE GARLIC COMPANY, and BEAUCOUP CRAWFISH, INC., dba RICELAND CRAWFISH, INC., individually and on behalf of all others similarly situated,**

                   Plaintiffs,

          v.

**UNITED STATES**,

                   Defendant.

</td>
<td>

Before: Timothy C. Stanceu, Judge

Court No. 09-00141

</td>
</tr>
</table>

<u>**JUDGMENT**</u>

        Upon review of plaintiffs' complaint, defendant's motion to dismiss, plaintiffs' arguments in opposition, and all other motions, filings, and proceedings herein, after due deliberation, and in conformity with *Sioux Honey Association v. Hartford Fire Insurance Co.*, 34 CIT __, 700 F. Supp. 2d 1330 (2010), and the Opinion issued this date, it is hereby

        **ORDERED** that plaintiffs' motion for leave to file a reply regarding plaintiffs' motion for jurisdictional discovery, as set forth in Plaintiffs' Motion for Leave to File a Reply to the Government's Response to Plaintiffs' Motion for Jurisdictional Discovery and Motion for Oral Argument Concerning Request for Jurisdictional Discovery, be, and hereby is, GRANTED; it is further

        **ORDERED** that plaintiffs' reply regarding plaintiffs' motion for jurisdictional discovery, as set forth in Plaintiffs' Reply to the Government's Response to Plaintiffs' Motion for Jurisdictional Discovery and Motion for Oral Argument Concerning Request for Jurisdictional Discovery, be, and hereby is, deemed filed; it is further

        **ORDERED** that Plaintiffs' Motion for Jurisdictional Discovery be, and hereby is, DENIED; it is further

        **ORDERED** that Plaintiffs' Motion for Oral Argument Regarding Plaintiffs' Motion for Jurisdictional Discovery be, and hereby is, DENIED as moot; it is further

**ORDERED** that all claims stated in Counts Two, Three, Four, and Six of the complaint be, and hereby are, DISMISSED according to USCIT Rule 12(b)(1) because standing does not exist as to any of these claims; it is further

**ORDERED** that all claims stated in Counts One and Five of the complaint be, and hereby are, DISMISSED according to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted; it is further

**ORDERED** that all claims stated in Counts Seven, Eight, Nine, Thirteen, and Fourteen of the complaint be, and hereby are, DISMISSED according to USCIT Rule 12(b)(1) for lack of jurisdiction; it is further

**ORDERED** that all claims stated in Counts Ten, Eleven, Twelve, and Fifteen of the complaint be, and hereby are, DISMISSED according to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted; it is further

**ORDERED** that the United States' Motion to Dismiss Plaintiffs' Complaint for Lack of Jurisdiction and for Failure to State a Claim Upon Which Relief May Be Granted be, and hereby is, GRANTED; it is further

**ORDERED** that Plaintiffs' Motion for Oral Argument Regarding the Government's Motion to Dismiss be, and hereby is, DENIED as moot; and it is further

**ORDERED** that this action be, and hereby is, DISMISSED.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: August 27, 2010
          New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                         Deputy Clerk